UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ANTHONY DEFALCO and ERIC TRANTEL,

                  Plaintiffs,

         - against-

MTA BUS COMPANY, MTA POLICE
DEPARTMENT DETECTIVE BRIAN
LONGARO, MTA BUS COMPANY
SUPERVISOR OF MAINTENANCE
FRANCIS BRISTOW,

                Defendants.
----------------------------------------------------------x

## MEMORANDUM AND ORDER
15-CV-7369 (PKC)(RML)

PAMELA K. CHEN, United States District Judge:

       Plaintiffs Anthony Defalco and Eric Trantel bring this action against Defendants Detective

Brian Longaro, Supervisor Francis Bristow, and MTA Bus Company ("MTA Bus") alleging

violations of 42 U.S.C. § 1983 for false arrest, malicious prosecution, and denial of due process,

in connection with Plaintiffs' arrest, subsequent prosecution, and suspension of employment.

Before the Court is Defendants' motion for summary judgment.  For the reasons stated below,

Defendants' motion is granted.

## BACKGROUND

I.     **Relevant Facts**[1]

    A.     **Bus Battery Theft Investigation**

       On September 27, 2012, Defendant Francis Bristow, a foreman at the John F. Kennedy Bus

---

[1] Unless otherwise noted, a standalone citation to Defendants' 56.1 Statement or Plaintiffs' 56.1 Counterstatement denotes that this Court has deemed the underlying factual allegation undisputed.  Any citations to Defendants' 56.1 Statement or Plaintiffs' 56.1 Counterstatement incorporates by reference the documents cited therein.  Where relevant, however, the Court may cite directly to the underlying document.

Depot ("JFK Depot" or "Depot"), reported to John McGovern, the Security Director of MTA Bus's internal security department, and John Dhuman, an Assistant General Manager at the Depot, that bus batteries were being stolen by MTA Bus employees, including Plaintiff Eric Trantel.[2] (Defs.' 56.1, at ¶¶ 6, 8; Deposition of Francis Bristow ("Bristow Dep."), at 40:9-17, 41:17-19, 42:4-10.)[3] Bristow told McGovern that he had been notified about the thefts by three MTA Bus employees: Doodnath Seecharan, Maniram Sukhee, and Balmore Hamilton. (Defs.' 56.1, at ¶ 7; Dkt. 57-7, at ECF 26[4]; Bristow Dep., at 55:17-23.) MTA Bus's internal security department began an investigation based on Bristow's complaint. (Defs.' 56.1, at ¶ 9.) McGovern told Bristow that, going forward, he should "[k]eep an eye out for anyone removing batteries from the Depot without authorization." (Bristow Dep., at 57:12-17, 58:7-15.) On December 6, 2012, the investigation was reassigned from McGovern to MTA Police Department ("MTAPD") Detective Henry Micyk. (Defs.' 56.1, at ¶ 20.)

On December 8, 2012, Bristow received a call from his supervisor, Orin Blackman, who told him to go to the Depot fuel station, because "Eric Trantel is operating a forklift behind truck—[a]n unknown truck" in the Engine Wash Bay. (Bristow Dep., at 152:12-23; *see also* Deposition of Orin Blackman ("Blackman Dep."), Dkt. 60-50, at 87:11-89:4.) Bristow, who was Trantel's

---

[2] Plaintiffs Eric Trantel and Anthony Defalco have been employed as "helpers" for Defendant MTA Bus since approximately 2006. (Deposition of Anthony Defalco ("Defalco Dep."), Dkt. 57-4, at 8:8-21; Deposition of Eric Trantel ("Trantel Dep."), Dkt. 57-5, at 10:5-10.) The job duties of a helper include: going to other depots to pick up parts, helping mechanics, fueling buses, working with bus parts, working with bus batteries, loading and unloading trucks, and removing batteries from the bus depots. (Defendants' 56.1 Statement ("Defs.' 56.1"), Dkt. 56, at ¶ 2; Plaintiffs' 56.1 Counterstatement ("Pls.' 56.1 Counter"), Dkt. 59, at ¶ 43.)

[3] Excerpts from Francis Bristow's deposition can be found in Dkts. 57-8, 60-43, and 63-1 and will be referred to collectively as "Bristow Dep.".

[4] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

supervisor that day, went to the glass window or door in the fuel station office and saw Trantel in a forklift placing a pallet of bus batteries onto an MTA pick-up truck being operated by Defalco. (Dkt. 57-7, at ECF 28; Dkt. 57-15; Bristow Dep., at 156:3-173:3.)  According to Bristow, Defalco then left the Depot with the batteries in the truck and later returned to the Depot without them. (Defs.' 56.1, at ¶ 15.)  Bristow subsequently submitted a report to Blackman about what he observed and also reported the incident to McGovern.  (Dkt. 60-8, at ECF 3; Defs.' 56.1, at ¶ 15.)

On February 26, 2013, the investigation was transferred from MTAPD Detective Micyk to Defendant MTAPD Detective Brian Longaro.  (Defs.' 56.1, at ¶ 25.)  Longaro received all of Micyk's case files and spoke with the MTA's Office of the Inspector General's Principal Investigator William McGowan, McGovern, and McGovern's supervisor, Robert Piccarelli, regarding the investigation.  (Id. at ¶ 26; Dkt. 57-7, at ECF 25-26.)  Longaro also spoke with Bristow "the first day [he] was assigned the investigation.[5]  [Longaro] would have asked [Bristow] what -- to go through all the dates of any time [Bristow] saw theft happening, occurring, when it first started, who was involved and any current theft."  (Deposition of Brian Longaro ("Longaro Dep."), at 126:9-127:24.)[6,7]

---

[5] However, Longaro did not speak to Bristow in person, but rather, over the telephone. (Pls.' 56.1 Counter, at ¶ 36.)

[6] Excerpts from Brian Longaro's deposition can be found in Dkts. 57-23, 60-44, and 63-3 and will be referred to collectively as "Longaro Dep.".

[7] At the same time, Longaro: (1) did not speak to Micyk, Blackman, Hamilton, Seecharan, or Sukhee (Longaro Dep., at 45:12-14, 64:15-21; Blackman Dep., at 116:3-12); (2) never tried to get the security footage or speak to the security guards from the JFK Depot (Pls.' 56.1 Counter, at ¶¶ 30-31); (3) took no steps to determine who Defalco's supervisor was (Longaro Dep., at 86:16-87:5); (4) did not ascertain who the battery custodian was at the Depot (id. at 182:11-16); (5) never asked for Bristow's personnel file or inquired about Bristow's reputation (id. at 182:17-22); and (6) never had Bristow sign a sworn statement regarding his allegations against Plaintiffs (id. at 195:18-25).  Additionally, Longaro never sought to assess Bristow's credibility and "does not recall" whether he took any steps to corroborate Bristow's story regarding the December 8, 2012

On March 11, 2013, Longaro received a report from McGovern that Bristow had informed McGovern that he had seen another MTA Bus employee, Vincent Williams, remove batteries from the Depot on March 9, 2013. Detective Longaro conducted surveillance at the Depot on March 11, 2013, and ultimately arrested Williams, who admitted that he had been stealing batteries from the Depot. (Defs.' 56.1, at ¶ 27.)

On March 13, 2013, Longaro arrested Defalco and charged him, via criminal complaint, based on the events of December 8, 2012, with Grand Larceny in the Fourth Degree and Criminal Possession of Stolen Property in the Fourth Degree. (*Id.* at ¶ 28; Dkt. 57-34, at ECF 3-5.) On March 14, 2013, Longaro arrested Trantel for Grand Larceny in the Fourth Degree and Criminal Possession of Stolen Property in the Fourth Degree and signed the criminal complaint the following day. (Defs.' 56.1, at ¶¶ 31, 35; Dkt. 57-19.) Defalco and Trantel were arraigned in Queens County criminal court on these charges on April 13 and April 15, 2013, respectively. (Defs.' 56.1, at ¶¶ 37-38.) On October 6, 2014, the cases against Defalco and Trantel were dismissed and sealed by the court. (*Id.* at ¶ 41.)

### B.    Post-Arrest Employment Termination Proceedings

Plaintiffs are members of Local 1179 Amalgamated Transit Union (the "Union" or "Local 1179"). (Defs.' 56.1, at ¶ 5.) Local 1179 and the MTA Bus Company are parties to a Collective Bargaining Agreement ("CBA"). (*Id.* at ¶ 43.) The CBA states, *inter alia*, "[t]he Company shall have the right to discharge or suspend an employee for sufficient cause" (*id.* at ¶ 44) and "[i]f the Company determines that a disciplinary hearing should be held, such hearing shall be held as soon as practicable after the event which prompted the discipline. . . . In the event the Union disputes

---

theft. (*Id.* at 170:2-20.) Longaro conducted no further investigation after Plaintiffs' arrests. (*Id.* at 194:15-22.)

the Company's determination, the Union may file a complaint with the arbitrator in accordance with the dispute mechanism set forth in [the CBA]" (*id.* at ¶¶ 45-46). MTA Bus policy is that "the decision to terminate an employee is made upon notification that the employee has been arrested for a felony charge." (Deposition of Robert Miller, Dkt. 57-23, at 185:4-9.)

In this case, once Defalco and Trantel were arrested, MTA Bus began the process of terminating their employment, and they were suspended without pay. (Defs.' 56.1, at ¶ 51; *see also* Affidavit of Anthony Defalco, Dkt. 60-36, at ¶¶ 11-13; Affidavit of Eric Trantel, Dkt. 60-36, at ¶¶ 10-12.) On April 26, 2013, Plaintiffs received a MTA Disciplinary Action Report recommending that they be fired and were also notified that a Step 1 hearing[8] would be held on May 3, 2013 regarding MTA Bus's decision to fire them. (Dkts. 57-24, 57-25, 57-26, 57-27.) However, the hearings were stayed pending the outcome of Plaintiffs' criminal cases. (Defs.' 56.1, at ¶¶ 53-54.) On October 10, 2014, four days after Plaintiffs' criminal cases were dismissed, the Union sought Plaintiffs' reinstatement to their positions. (*Id.* at ¶ 56.) Plaintiffs elected to arbitrate MTA Bus's decision to terminate through their union, and on February 10, 2015, MTA Bus Company reinstated Plaintiffs to their jobs. (*Id.* at ¶¶ 57, 60-62.)

## II.    Procedural History

Plaintiffs filed their initial complaint on December 28, 2015. (Dkt. 1.) On December 14, 2017, Plaintiffs withdrew their claims against Defendants Henry Micyk, John McGovern, Butch Miller, Tom Losito, and the MTA Police Department, as well as their claims for First Amendment

---

[8] A Step 1 hearing, which is a hearing with the union, the employee, and management, is the first opportunity for the employee to be heard on MTA Bus's decision to terminate employment. (Defs.' 56.1, at ¶ 48.) If the employee is unhappy with the outcome of the Step 1 hearing, a Step 2 hearing can be held before a member of MTA Bus management. (*Id.* at ¶ 49.) If the employee is unhappy with the outcome of the Step 2 hearing, the employee can appeal that decision to an arbitrator consistent with the CBA. (*Id.* at ¶¶ 46, 50.)

retaliation.  (Dkt. 47.)  Defendants Longaro, Bristow, and MTA Bus's motion for summary judgment on Plaintiffs' remaining claims for false arrest, malicious prosecution, and due process was fully briefed on April 3, 2018.  (Dkt. 54.)  That same day, Defendants also filed a motion to strike the affidavit of Defalco's supervisor, Vinny Hernandez.  (Dkt. 65.)

## LEGAL STANDARD

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party.  *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).  Once this burden is met, however, the burden shifts to the nonmoving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial.  *Spinelli v. City of N.Y.*, 579 F.3d 160, 166-67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).  A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]."  *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quotation omitted; alteration in original).  In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quotation omitted).

In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The Court also construes any disputed facts in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48.

## DISCUSSION

### I.     Claims Against Defendant Bristow

The first element that a plaintiff must establish in a section 1983 claim is state action. State action "requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). State employees act under the color of state law when they act "(1) in their official capacity 'clothed with the authority of state law,' or (2) 'under pretense of law' by purporting to act with official sanction." *Louis v. Metro. Transit Auth.*, 145 F. Supp. 3d 215, 223 (E.D.N.Y. 2015) (quoting *Sazon Inc. v. N.Y.*, No. 11-CV-3666 (HB), 2011 WL 5910171, at *4 (S.D.N.Y. Nov. 28, 2011)). However, "[m]ere employment by a state . . . does not automatically mean that a defendant's actions are taken under the color of state law." *Kern v. City of Rochester,* 93 F.3d 38, 43 (2d Cir. 1996) (citing *Polk County v. Dodson*, 454 U.S. 312, 319-20 (1981)); *Monsky v. Moraghan*, 947 F. Supp. 53, 55 (D. Conn. 1996) ("Arguing that, because an individual is a state employee, his conduct is state action is tantamount to the tail wagging the dog: Status as a state employee is not enough to establish action under the color of state law."), *aff'd*, 127 F.3d

243 (2d Cir. 1997). "The dispositive test appears to be whether the defendants acted pursuant to power they possessed by state authority." *Petrosky v. N.Y. State Dep't of Motor Vehicles*, 72 F. Supp. 2d 39, 63 (N.D.N.Y. 1999). "More is required than a simple determination of whether the defendant is a state employee, or whether the conduct occurred on or off duty, or during work hours, or on work premises." *Segreto v. Kirschner*, No. 3:95-CV-447 (GLG), 1998 WL 289145, at *8 (D. Conn. Mar. 11, 1998) (citations omitted).

Here, Plaintiffs argue that Bristow's conduct arose solely out of his employment by MTA Bus; specifically, Plaintiffs allege that Bristow heard about the alleged thefts from other MTA employees and used his status as an MTA employee to take a daily inventory of the bus batteries, take pictures of the bus battery area, provide investigators with the suspects'[9] work schedules, and report the suspected December 8, 2012 theft by Plaintiffs to his (Bristow's) supervisor, Blackman, who forwarded Bristow's report to the MTAPD. (Plaintiffs' Brief ("Pls.' Br."), Dkt. 58, at 8-11.) The Court finds that this is insufficient to establish "that the violation of [Plaintiffs'] constitutional rights, if any, was accomplished through power available to [Bristow] by virtue of his status as a state employee." *Rodriguez v. N.Y.C. Transit Auth.*, No. 06-CV-13762 (RJS), 2009 WL 3817298, at *4 (S.D.N.Y. Nov. 10, 2009). "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he *abuses* the position given to him by the State." *Monsky v. Moraghan,* 127 F.3d 243, 245 (2d Cir. 1997) (quoting *West,* 487 U.S. at 49-50) (emphasis in original). In this case, Bristow did not abuse his position as an MTA supervisor and his conduct was not "supported by the authority of [his] position as a state employee." *Cahill v. O'Donnell*, 7

---

[9] There were multiple employees investigated as part of the MTA's investigation of the bus battery thefts.

F. Supp. 2d 341, 348 (S.D.N.Y. 1998).[10] Rather, Bristow's conduct was incidental to his position as an MTA employee and would have been no different if he were an employee of a private entity.

To the extent that Plaintiffs argue that Bristow abused his authority by reporting, or falsely reporting, to the MTAPD or MTA Bus's internal security that he witnessed the battery thefts, such allegations are "insufficient to meet [Plaintiffs'] burden" to prove state action. *Rodriguez*, 2009 WL 3817298, at *4; *see Lucas v. Riggi*, No. 07-CV-6200L (DGL), 2008 WL 4758706, at *3 (W.D.N.Y. Oct. 29, 2008) ("[R]eporting an actual or perceived crime to the police do[es] not meet the 'color of law' requirement. . . . [The defendants'] situation [is] no different from that of any other eyewitness or citizen who relays information to the police which is ultimately used as the basis for an arrest."); *cf. Flores v. Levy*, No. 07-CV-3753 (JFB)(WDW), 2008 WL 4394681, at *7 (E.D.N.Y. Sept. 23, 2008) ("[T]he fact that plaintiff alleges that [the defendant] perjured herself as a witness at [plaintiff's] trial does not transform [the defendant] into a state actor."). In a similar action, the Northern District of Illinois found that a government supervisor "who, in the course of her duties" reported the abuse of a patient through government channels (by contacting her supervisor and the internal investigations unit) and "allegedly made false statements to the police" was not a state actor even though, based on the defendant's allegations,

> [t]he police then launched an investigation which ultimately led to Plaintiffs' arrest. . . . [The defendant] may have been acting in accordance with her official duties by reporting [the patient's] injuries, but this claim is for false arrest. Neither [the defendant's] status as a supervisory official nor [state] policy gave [defendant the] authority to effectuate an arrest or made her responsible for the ultimate outcome of the investigation. She cannot misuse authority she does not have. . . . The police officers who investigated and made the subsequent arrests are the parties who would be responsible for a false arrest. . . . [The defendant's] position did not have any law enforcement authority, therefore she was not acting under color of law for a § 1983 false arrest claim merely by virtue of her employment at [a state facility].

---

[10] Neither the Court nor Plaintiffs have identified any other standard by which to evaluate whether a state employee's conduct is tantamount to acting under the color of state law.

*Berry v. Lindemann,* No. 00-CV-5540 (JBZ), 2006 WL 2536683, at *2 (N.D. Ill. Aug. 31, 2006) (citations omitted); *cf. Adebiyi v. City of N.Y.,* No. 13-CV-480 (WFK)(CLP), 2014 WL 4922888, at *4 (E.D.N.Y. Sept. 30, 2014) ("Case law in this Circuit is well-established that the provision of information to a police officer—even if that information is false or results in the officer taking affirmative action—is insufficient to constitute 'joint action' with state actors for purposes of § 1983.") (citation and internal quotation marks omitted). Such is the situation here: neither Bristow's status as a supervisory official nor MTA Bus policy "gave [him] the authority to effectuate an arrest or made [him] responsible for the ultimate outcome of the investigation." *Berry*, 2006 WL 2536683, at *2; *cf. Castro v. Cty. of Nassau*, 739 F. Supp. 2d 153, 174 (E.D.N.Y. 2010) ("Moreover, the employees of a[] [private] organization do not become state actors simply because they conducted an internal investigation of wrongdoing and told the police about the results of that investigation.").[11] Additionally, Bristow's "conduct may not be deemed to have been under color of state law merely because [MTAPD Detective Longaro] chose to place great weight on [Bristow's] allegations[.]" *Rodriguez*, 2009 WL 3817298, at *5.

Yet, Plaintiffs argue that Bristow did more than report a crime. Plaintiffs assert that Bristow "engage[d] in a lengthy investigation on work time into alleged on-the-job misconduct by co-workers" and was essentially "deputized" by McGovern to investigate the alleged thefts. (Pls.' Br., at 11.) But Plaintiffs have not cited any case law to support their contention that providing

---

[11] Plaintiffs also argue that Bristow "instigated" Plaintiffs' arrest through his conduct. (Pls.' Br., at 11-16.) The Seventh Circuit has found that "[s]tate supervisory personnel who abuse their authority by 'secur[ing] without justification the arrest of an employee under their supervision' at a government facility may be considered to be acting under color of state law." *Berry*, 2006 WL 2536683, at *2-3 (quoting *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir. 1990)). However, "[t]his exception for State supervisory personnel only applies when the supervisor calls the police and requests Plaintiffs' arrest. Merely lying to the police does not constitute acting under color of law." *Id.* There is no allegation here that Bristow requested Plaintiffs' arrest. (*See* Pls.' Br., at 13-16.)

such investigatory information constitutes an abuse of Bristow's position. *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."); *Williams v. Josephs*, No. 91-CV-8178 (MBM), 1993 WL 403969, at *3 (S.D.N.Y. Oct. 7, 1993). And, even assuming *arguendo* that Plaintiff was in fact deputized by McGovern, Plaintiffs have cited no case law to support the argument that being deputized by an agency's *internal* security department means that Bristow's conduct constituted an abuse of his state authority, or is akin to acting in a law enforcement capacity.[12]

The Court is not persuaded by the two cases cited by Plaintiffs. (Pls.' Br., at 8-11.) In *McAuliffe v. Pomposello*, the court found that there was a genuine dispute of material fact as to whether the defendant, an off-duty MTAPD officer, acted under color of law and "invoked the real or apparent power" of the MTAPD where the plaintiff testified that the defendant "directed his fellow officers to arrest [plaintiff]", "remove[d] her from the train", and "detain[ed] the train for . . . a substantial length of time". No. 10-CV-8721 (JSR), 2011 WL 4633867, at *4 (S.D.N.Y. Oct. 4, 2011). This is clearly distinguishable from the instant case where the connection between Bristow and the arrest is far weaker.[13] Here, according to Plaintiffs, Bristow used his position as

---

[12] The Court also notes that there is no evidentiary support for Plaintiffs' assertion that Bristow conducted an extensive investigation as to them or the December 8, 2012 incident for which Plaintiffs were arrested. At oral argument, Plaintiffs argued that Bristow followed around other employees suspected of theft. It is not apparent to the Court that this is relevant—even to the extent he was supposedly ordered to do so by McGovern—to the question of whether Bristow was acting under the color of state law with respect to this case.

[13] Similarly, in *Gleason v. Scoppetta*, the Second Circuit found that the plaintiff had sufficiently alleged claims for First Amendment retaliation and Fourth Amendment right to privacy in his medical records where the defendants improperly accessed a New York City Fire Department database, retrieved the plaintiff's medical information, and then one or more of the defendants provided that medical information to a reporter who wrote an article in the Village Voice, causing harm to the plaintiff. 566 F. App'x 65, 68 (2d Cir. 2014). There, the court held

a state employee to access information and report the alleged battery theft by Plaintiffs, the information was passed along to Bristow's supervisors and investigators, the investigators investigated, and Plaintiffs were arrested months later.

In the other case cited by Plaintiffs, *Rateau v. City of New York*, the plaintiff allegedly made a threatening phone call to the defendant, a 311 operator at the New York City Department of Information and Technology ("DoITT"). No. 06-CV-4751 (KAM)(CLP), 2009 WL 3148765, at *1 (E.D.N.Y. Sept. 29, 2009). The defendant subsequently called the DoITT General Counsel's office, was advised to call the police, and the plaintiff was arrested. *Id.* at *2. On summary judgment, the court found that the defendant acted under the color of state law because "[t]o the extent that [the defendant] acted in the manner alleged by plaintiff, he did so in his official capacity as an assistant commissioner of DoITT" and "the evidence indicate[d] that [the defendant's] interaction with plaintiff arose solely out of [the defendant's] position as a DoITT employee, not out of any personal relationship." *Id.* at *5. The Court respectfully disagrees with the holding in *Rateau* for two reasons. First, the court in *Rateau* failed to address the defendant's argument that in order to find that he acted under color of state law, the court had to find that the defendant "abused his position as a city employee in [some] way." *Id.* at *4 (citations and internal quotation marks omitted). Second, in contrast to *Rateau*, the parties' interactions in this case only arise out of the fact that they are all employees of the *same* agency; the fact that they are *municipal* employees is irrelevant. *See Lucas,* 2008 WL 4758706, at *3 ("[T]he Supreme Court in *Polk*

---

that the defendants "abuse[d] the position given to [them] by the State, which is to say, they misused power that they possessed only because of authority that the City had granted them." *Id.* at 69 (citation and internal quotation marks omitted). In *Gleason*, "the misuse of official power made the commission of a constitutional wrong possible, even though the official committed abusive acts for personal reasons far removed from the scope of official duties." *United States v. Giordano,* 442 F.3d 30, 44 (2d Cir. 2006). Here, there is no case law supporting the notion that Bristow "misused" his power by providing information to MTA internal investigators.

*County* expressly rejected the view that a person's status as a state employee or official determines whether that person acts under color of state law, even if . . . the acts at issue were taken in the performance of the person's job.") (citing *Polk County*, 454 U.S. at 319). Again, the "mere fact" that Bristow was a state employee at the time of the events in question, "did not transform [his] acts into state action." *Id.*; *see also McArthur v. Bell,* 788 F. Supp. 706, 710 (E.D.N.Y. 1992).

Unlike the cases cited by Plaintiffs, here, all of the parties were public employees, and there is no evidence that Bristow "acted pursuant to power [he] possessed by state authority" that Plaintiffs themselves did not possess. The weight of the case law[14] focuses on the power imbalance between a party using the weight of state authority, and a party without such power. *See Josephs*, 1993 WL 403969, at *3 (collecting cases). Here, "[t]he only state authority involved in the alleged [constitutional violation], aside from the fact that it occurred at a city agency, is that [Bristow] was a civil servant", and that is insufficient to find that Defendant Bristow was acting "under the color of state law". *Id.* at *2. Therefore, Defendants' motion for summary judgment is granted as to Defendant Bristow.

## II.    False Arrest Claim

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). To prevail on a claim of false arrest or unlawful imprisonment, a plaintiff must prove that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of N.Y.*, 331 F.3d 63, 75 (2d Cir. 2003)

---

[14] The only exception is the state supervisory personnel carve-out, which is not applicable in this case, as discussed *supra* at note 11.

(internal quotation marks and citation omitted). "'[T]he existence of probable cause' for an arrest 'is an absolute defense to a false arrest claim.'" *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (quoting *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006)).  "Although the existence of probable cause must be determined with reference to the facts of each case, in general '[p]robable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'"  *Manganiello*, 612 F.3d at 161 (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)).

The only disputed issue with respect to the false arrest claim against Defendant Longaro is whether he had probable cause to arrest Plaintiffs.  Plaintiffs argue that Longaro did not have probable cause to arrest Plaintiffs because "there is no evidence that Longaro took any steps to assess the reliability or veracity of [Bristow] or the basis for [Bristow's] knowledge that Plaintiffs had engaged in theft." (Pls.' Br., at 19 (emphasis, citations, and internal quotation marks omitted).) Moreover, they argue that Longaro should have doubted Bristow's veracity because: (1) an unnamed officer allegedly called Sukhee before Longaro arrested Plaintiffs to ask if Sukhee had reported a theft to Bristow, and Sukhee denied making such a report; (2) Longaro "knew that Bristow could not have seen Plaintiffs stealing batteries" because Longaro went to the location where Bristow was allegedly standing when he saw the theft; and (3) Longaro should have known that Bristow's statement that Defalco had no authority to remove batteries from the Depot was false. (*Id.* at 20-21.)

The Court rejects these arguments.  While "it is [] true that a police officer does not have *carte blanche* to neglect all investigative duties in relying on a victim statement," *Parisi v. Suffolk Cty.*, No. 04-CV-2187 (ENV)(ETB), 2009 WL 4405488, at *7 (E.D.N.Y. Nov. 30, 2009), "it is

well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity[,]" *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (citations and internal quotation marks omitted).  In this case, only two days before Longaro arrested Plaintiffs, Longaro arrested and secured a confession from another MTA Bus employee, Vincent Williams, based on Bristow's allegations that he saw Williams remove batteries from the Depot.  (Defs.' 56.1, at ¶ 27; *see also* Dkt. 57-7, at ECF 38-39; Dkt. 60-10.)  In determining probable cause, "'a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated' is especially significant in establishing probable cause." *Panetta*, 460 F.3d at 395 (quoting *Florida v. J.L.*, 529 U.S. 266, 270 (2000)).  The Williams arrest and confession bolstered Bristow's credibility and "the probable cause standard does not require that the arresting officer affirmatively seek out reasons to doubt the victim or witness where none are apparent." *Parisi*, 2009 WL 4405488, at *7; *see also McDermott v. City of N.Y.*, No. 94-CV-2145 (ILG), 1995 WL 347041, at *4 (E.D.N.Y. May 30, 1995) ("To insist upon a collateral investigation into the credibility of the complainants would place an unfair burden on law enforcement officers.  It would be unreasonable and impractical to require that each complainant be assessed prior to police action regarding the subject of the complaint.").  "The Court's inquiry, therefore, is to determine if there is a material fact in issue as to whether [Longaro] had reason to doubt the veracity of [Bristow's] story prior to arresting [Plaintiffs.]" *Parisi*, 2009 WL 4405488, at *7.

Here, Plaintiffs have put forth no evidence that Longaro knew any information at the time of Plaintiffs' arrests that raised doubt as to Bristow's veracity. "When determining whether probable cause exists courts must consider those facts available to the officer at the time of the

arrest and immediately before it." *Betts v. Shearman*, 751 F.3d 78, 83 (2d Cir. 2014) (quoting *Panetta*, 460 F.3d at 395). First, there is no evidence that it was Longaro that contacted Sukhee before arresting Plaintiffs. Sukhee's affidavit merely states that he "received a phone call from someone who identified himself as a MTA police officer . . . [who] asked if [Sukhee] had ever witnessed any theft at the Depot, and [Sukhee] told him [that he] had not." (Affidavit of Maniram Sukhee, Dkt. 60-33, at ¶¶ 4-8.) At oral argument, Plaintiffs contended that a jury could reasonably find that Sukhee spoke to Longaro since he and his partner were the only two MTAPD officers assigned to the case. However, as neither Sukhee nor Longaro recall whether they spoke to each other, it would be "mere speculation and conjecture" that Longaro was the investigator to whom Sukhee spoke, which "is insufficient to preclude the granting of the [summary judgment] motion." *Harlen Associates v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).[15]

With respect to Plaintiffs' second argument, Longaro was unable to recall at his deposition whether he had visited the location from which Bristow said he witnessed the battery theft. (Longaro Dep., at 146:23-148:16.) Thus, there simply is no evidence to support Plaintiffs' contention that Longaro knew that Bristow allegedly could not have seen Plaintiffs removing the batteries on December 8, 2012, as Bristow reported. Finally, Plaintiffs provide no basis, factual or legal, for their contention that Longaro should have known that Bristow's statement that Defalco had no authority to remove batteries from the Depot was false.

---

[15] Moreover, had Sukhee spoken to anyone other than Longaro, Longaro could not have been expected, as a matter of law, to know that the call had taken place. While Longaro was permitted to act reasonably in relying on information received from other law enforcement officials under the collective knowledge doctrine, the Second Circuit has explicitly stated that the inverse is not also true. *See Savino*, 331 F.3d at 74 (collective knowledge doctrine cannot be used to impute to an officer "facts known to some [other] members of the police force which exonerate an arrestee") (quoting *United States v. Valez*, 796 F.2d 24, 28 (2d Cir. 1986)).

Plaintiffs' post-arrest evidence casting doubt on the veracity of Bristow's allegations is of no moment in determining the existence of probable cause at the time of Plaintiffs' arrest.

> Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest. . . . Although a better procedure may [be] for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove the plaintiff's version wrong before arresting him. Nor does it matter that an investigation might have cast doubt upon the basis for the arrest.

*Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (internal quotation marks and citations omitted); *see also United States v. Fama,* 758 F.2d 834, 838 (2d Cir. 1985) ("[T]he fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause."). Therefore, the Court finds that Defendant Longaro had probable cause to arrest Plaintiffs based on Bristow's eyewitness and written statements. Defendants' motion for summary judgment is granted as to Plaintiffs' false arrest claim.

## III. Malicious Prosecution Claim

In order to sustain a section 1983 claim for malicious prosecution, a plaintiff "must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello*, 612 F.3d at 160-61 (citations omitted). A plaintiff must prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (quoting *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995)). Plaintiff must also allege some "post-arraignment deprivation of liberty" that is made "pursuant to legal process." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995).

In light of the Court's finding of probable cause at the time of Plaintiffs' arrest, Plaintiffs' malicious prosecution claim fails. "Where there is no change in the information known to police

at the time of arrest and prosecution, probable cause sufficient to warrant arrest precludes a claim for malicious prosecution." *Cortes v. City of N.Y.*, 148 F. Supp. 3d 248, 255 (E.D.N.Y. 2015). The burden rests on the plaintiff to establish that some intervening fact was discovered that would dissipate probable cause between the time of arrest and arraignment. *Roberts v. City of N.Y.*, No. 16-CV-5409 (BMC), 2017 WL 4357291, at *9 (E.D.N.Y. Sept. 29, 2017). Plaintiffs have pointed to no such intervening facts. Therefore, the Court grants Defendants' motion for summary judgment as to Plaintiffs' malicious prosecution claim.

## IV. Due Process Claim

In their motion for summary judgment, Plaintiffs allege a violation of due process, namely that Defendant MTA Bus had a custom or policy of automatically suspending, without pay, employees arrested for felonies. (Pls.' Br., at 26-30.) Defendants argue, however, that this claim was not adequately pled in the complaint and, therefore, Plaintiffs should not be allowed to proceed on this claim. (Defendants' Brief, Dkt. 55, at 21-22.) The Court agrees.

The pleading requirements of the Federal Rules of Civil Procedure "are designed to provide defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests." *DeFilippo v. N.Y. State Unified Court Sys.*, No. 00-CV-2109 (NGG)(JMA), 2006 WL 842400, at *20 (E.D.N.Y. Mar. 27, 2006), *aff'd*, 223 F. App'x 45 (2d Cir. 2007). "While a plaintiff may rely on any set of facts to support an already-pleaded claim, a plaintiff may not add new theories of liability at any time." *Ferrari Club of Am., Inc. v. Bourdage*, No. 6:12-CV-6530 (EAW), 2017 WL 6419061, at *4 (W.D.N.Y. Apr. 25, 2017). Plaintiffs' complaint alleges, *inter alia*,

> [t]he arrests and prosecution of Defalco and Trantel without probable cause, and their suspension from work without pay and subsequent malicious prosecution, were part of a policy or custom on the part of MTA Bus and the MTAPD, to arrest, suspend without pay and maliciously prosecute MTA Bus employees without probable cause, based on the false allegations of theft.

(Complaint, Dkt. 1, at ¶ 37.) This allegation does not provided "fair notice" of Plaintiffs' current claim because it is not predicated on a policy of denying pre-deprivation due process where employees are arrested for felonies; rather, it is focused on whether Plaintiffs were arrested, suspended, and prosecuted pursuant to an MTA policy that permitted these actions in "the absence of any probable cause for the arrests", and where there exists "plainly exculpatory evidence". (*Id.* at ¶ 33.)

Plaintiffs argue that even if the complaint did not put Defendants on notice, Plaintiffs "spelled out their legal theory prior to the end of discovery (and before three of Defendants' five depositions), in response to Defendants' interrogatories." (Pls.' Br., at 27.) Plaintiffs' interrogatory response stated, in relevant part, "Plaintiffs intend to submit one or more affidavits (which do not exist at this time) . . . [that] will prove and support Plaintiffs' claim that MTA Bus Company, at all relevant times, maintained a custom or policy of automatically suspending without pay employees arrested for felony offenses, based solely upon the fact of their arrest." (Dkt. 60-40, at ECF 3.) However, this interrogatory response was not submitted until September 22, 2017 (*id.* at ECF 4), only six days before the close of discovery (*see* 9/28/17 minute entry). Moreover, this was two business days before Defendants' deposition of Bennie Caughman (Dkt. 57-29), a representative from Plaintiffs' union, and three business days before the parties' deposition of Robert Miller, a member of MTA Bus management (Dkt. 57-23). Taking into consideration the timing of the addition of this claim—on the eve of Defendants' depositions of key individuals involved in the suspension/termination hearing process, the close of discovery, and the beginning of dispositive motion practice—the Court believes that Defendants would be "unfairly prejudiced by [the injection of] these new theories of liability" at that late stage in the case. *Campoli v. Chubb Grp. of Ins. Companies*, No. 3:04-CV-1004 (MRK), 2006 WL 57391, at *7 (D. Conn. Jan. 9,

2006); *see also Morales v. United States*, 961 F. Supp. 633, 639 (S.D.N.Y. 1997) (finding that the plaintiff had engaged in "dilatory conduct and neglect" where he waited until "the close of discovery and the beginning of dispositive motion practice between the parties before asserting [a] new claim"); *Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 407-09 (S.D.N.Y. 2000) ("Although a complaint need not correctly plead every legal theory supporting the claim, at the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense.") (citations omitted). Therefore, the Court strikes Plaintiffs' due process claim.

Even assuming *arguendo* that Plaintiffs had adequately pled a due process claim, it would fail as a matter of law. The Fourteenth Amendment requires that "No state shall . . . deprive any person of . . . property, without due process of law." In a section 1983 suit brought to enforce procedural due process rights, a court must determine "(1) whether a property interest is implicated, and, if it is, (2) what process is due before the plaintiff may be deprived of that interest." *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011). Due process "does not, in all cases, require a hearing before the state interferes with a protected interest, so long as 'some form of hearing is [provided] before an individual is finally deprived of [the] property interest.'" *Id.* (quoting *Brody v. Vill. of Port Chester*, 434 F.3d 121, 134 (2d Cir. 2005)) (emphasis omitted). Here, it is undisputed that Plaintiffs were provided with adequate post-deprivation process through the Union and were ultimately reinstated to their positions with back pay as a result of post-deprivation proceedings. (Defs.' 56.1, at ¶¶ 5, 43-46, 48-50, 52-54, 56-58, 60, 62.) The only question is whether Defendant MTA Bus was required to provide a hearing before suspending Plaintiffs.

The Court answers that question in the negative. Under the test set forth in *Mathews v. Eldridge*, the Court examines the following factors: "[f]irst, the private interest that will be affected

by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." 424 U.S. 319, 335 (1976). With respect to the private interest at issue, "[t]he Supreme Court has repeatedly recognized the severity of depriving someone of the means of his livelihood." *Nnebe*, 644 F.3d at 159 (quoting *Gilbert v. Homar*, 520 U.S. 924, 932 (1997)) (collecting cases). However, Plaintiffs argue that this factor is particularly salient in this case because they were "suspended without pay for *two years*." (Pls.' Br., at 30 (emphasis in original)); *see also Gilbert*, 520 U.S. at 932 ("So long as the suspended employee receives a sufficiently prompt postsuspension hearing, the lost income is relatively insubstantial[.]"). But Plaintiffs fail to acknowledge that, in April 2013, one month after they were arrested, they were notified that a Step 1 hearing would be held on MTA Bus's decision to fire them. (Defs.' 56.1, at ¶ 52.) It was *Plaintiffs'* union that requested that the hearings be held in abeyance for so long because Plaintiffs wanted to wait until their criminal proceedings were resolved. (*Id.* at ¶ 53.) Therefore, the Court does not attribute the delay to Defendants or give it great weight. Moreover, the Supreme Court has previously found that a "suspension of up to 90 days without the benefit of a post-suspension ruling" is sufficient to satisfy due process. *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 245 (1988). Here, Plaintiffs were notified within one month of their suspension that they were entitled to a post-suspension hearing, but they chose not to take advantage of this right for another seventeen months.

With respect to the Government's interest, the Supreme Court has found that "the State has a significant interest in immediately suspending, when felony charges are filed against them, employees who occupy positions of great public trust and high public visibility." *Gilbert*, 520

U.S. at 932 ("We think . . . that the government does not have to give an employee charged with a felony a paid leave at taxpayer expense. If his services to the government are no longer useful once the felony charge has been filed, the Constitution does not require the government to bear the added expense of hiring a replacement while still paying him."). Plaintiffs argue that this factor does not favor Defendants or is irrelevant here because Plaintiffs do not occupy such positions of great public trust or high visibility. (*See* Pls.' Br., at 29.) However, in *Barry v. Barchi*, the Supreme Court held that the State could suspend a horse trainer, who was not a visible or public figure, without a pre-suspension hearing because "the State also has an important interest in assuring the integrity of the racing carried on under its auspices." 443 U.S. 55, 64 (1979). The Court finds that the same reasoning applies here; Defendants' interest in preserving public confidence in its transportation authority "is at least as significant as the State's interest in preserving the integrity of the sport of horse racing." *Gilbert*, 520 U.S. at 932-33.

Finally, "[t]he last factor in the *Mathews* balancing, and the factor most important to resolution of this case, is the risk of erroneous deprivation and the likely value of any additional procedures." *Id.* at 933. As the Supreme Court clearly articulated in *Gilbert*,

> the purpose of a pre-termination hearing is to determine whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action. By parity of reasoning, the purpose of any pre-suspension hearing would be to assure that there are reasonable grounds to support the suspension without pay. But here that has already been assured by the arrest and the filing of charges. . . . [T]he imposition of felony charges itself is an objective fact that will in most cases raise serious public concern. It is true . . . that there is more reason to believe an employee has committed a felony when he is indicted rather than merely arrested and formally charged; but for present purposes[,] arrest and charge give reason enough. They serve to assure that the state employer's decision to suspend the employee is not baseless or unwarranted, in that an independent third party has determined that there is probable cause to believe the employee committed a serious crime.

*Id.* at 932–34 (citations, quotation marks, and emphasis omitted); *see also Nnebe*, 644 F.3d at 159 (holding that where the plaintiff was arrested "for a felony or serious misdemeanor . . . insofar as the post-suspension hearing affords adequate process, no pre-suspension hearing is required"). Here, given that there was probable cause for Plaintiffs' arrest[16], the prompt post-suspension hearing that Plaintiffs were afforded, and MTA Bus's interest in immediately suspending individuals accused of theft, Plaintiffs' due process claim fails.

## CONCLUSION

For the reasons stated herein, Defendants' motion for summary judgment is granted. Defendants' motion to strike is denied as moot. The Clerk of Court is respectfully requested to enter judgment and terminate this case accordingly.

SO ORDERED.

 /s/ Pamela K. Chen
PAMELA K. CHEN

Dated: September 11, 2018          United States District Judge
       Brooklyn, New York

---

[16] At oral argument, Plaintiffs argued that the MTAPD did not constitute an "independent third party" for purposes of determining probable cause because the MTAPD is affiliated with Defendant MTA Bus. (*See also* Pls.' Br., at 30.) Plaintiffs have put forth no evidence or case law to support this conclusion.